UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ANGEL ALVAREZ,

                Plaintiff,

       -against-                          11 Civ. 5464 (LAK)

THE CITY OF NEW YORK, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## MEMORANDUM OPINION

Appearances:

           Matthew J. Galluzzo
           Zachary H. Johnson
           GALLUZZO & JOHNSON LLP

           *Attorneys for Plaintiff Angel Alvarez*

           Katherine A. McFarlane
           Ben N. Kuruvilla
           Assistant Corporation Counsel

           MICHAEL A. CARDOZO
           CORPORATION COUNSEL

           *Attorneys for Defendants The City of New York, Police Commissioner Raymond Kelly, P.O. Douglas A. Brightman, P.O. Thomas M. Cozart, Sgt. Paul M. Kerrigan, P.O. Michael T. Tedeschi, P.O. Tiffany Jeffries, P.O. Joseph Green, Sgt. Philip Terpos, Detective Daniel Hull, and Detective Robert Gibbons*

1

Lewis A. Kaplan, *District Judge.*

Before the Court is defendants' partial motion to dismiss the first amended complaint ("FAC") in this civil rights suit.  The motion is granted in part and denied in part, as provided below.

*Facts*

The facts alleged in the FAC need be summarized only briefly here: On August 8, 2010, plaintiff Angel Alvarez became engaged in a fistfight with one Luis Soto, who produced a firearm and shot plaintiff with it.[1]  Shortly thereafter, four police officers of the New York City Police Department (the "Shooting Officers") opened fire on the two, killing Soto and wounding plaintiff 27 times.[2]  After one of the Shooting Officers told another police officer that plaintiff had fired a weapon at them, plaintiff was transported to Harlem Hospital.[3]  Plaintiff awoke in the hospital on the morning of August 14, 2010, where he was arrested by officers of the NYPD and charged with the attempted murder of a police officer.[4]  Plaintiff appeared before the Criminal Court of the City of New York on August 16, 2010 and ultimately remained incarcerated until March 2, 2011, when a special grand jury declined to indict plaintiff in connection with the incident.[5]

Plaintiff brings claims *inter alia* for excessive use of force, false arrest, failure to

---

[1]    FAC ¶¶ 29–31.

[2]    *Id.* ¶¶ 32–35.

[3]    *Id.* ¶¶ 38, 40.

[4]    *Id.* ¶¶ 51–52.

[5]    *Id.* ¶¶ 57, 66.

intervene, and conspiracy under 42 U.S.C. §§ 1983, 1985 and on state law grounds, against the Shooting Officers, six other named police officers allegedly involved with the subsequent investigation, and a number of "John Doe" and "Richard Roe" officers.[6]

*Discussion*

I.      *Excessive Force and Failure to Intervene*

The FAC brings Section 1983 claims of excessive use of force against each Shooting Officer and defendant Terpos.[7]  Defendants have not moved to dismiss these claims.

But it seeks recovery also from each of the Shooting Officers and from all of the other officer defendants on the theory that each is liable for failing to intervene to prevent the allegedly excessive use of force by others.  The law permits a plaintiff to recover from an officer for failing to intervene in the excessive force used by another if the officer "observed or has reason to know . . . that excessive force is being used" and there was "a realistic opportunity to intervene to prevent the harm from occurring."[8]  Insofar as defendants seek dismissal of the failure to intervene claims against the Shooting Officers for other Shooting Officers' use of force, the motion is denied. The FAC alleges that "plaintiff collapsed to the ground" when the shooting began and, "[a]s plaintiff lay defenseless, [that] the [Shooting Officers] continued to fire bullets into him," prompting plaintiff

---

[6]

Plaintiff concedes that such claims brought against the City should be dismissed.  DI 39 at 2.  Plaintiff brings additional claims against defendants that are not the subject of defendants' motion and are discussed no further here.

[7]

The FAC alleges that Terpos used excessive force in the course of handcuffing plaintiff immediately after the shooting.  *See* FAC ¶¶ 39, 72.

[8]

*Anderson v. Branen*, 17 F.3d 552, 558 (2d Cir. 1994).

to "squeez[e] himself into the fetal position" for protection.  Moreover, "[w]hen the police shooting finally stopped," the officers allegedly had discharged 46 rounds and hit plaintiff 27 times.

These allegations render it plausible that each Shooting Officer observed or had reason to know the force being used by each of the other Shooting Officers.[9]  Moreover, one may infer from these allegations that the shooting took sufficient time that each Shooting Officer had a realistic opportunity to prevent or mitigate the harm caused by the others as it was occurring.[10]

The situation with respect to the other officer defendants is different.  The FAC does not allege facts from which one might conclude that any of them knew or was able to prevent the alleged use of unreasonable force against plaintiff.  Accordingly, the failure to intervene claims against them are dismissed.[11]

## II.    *False Arrest and Failure to Intervene*

The FAC brings federal and state false arrest claims against all defendants and, separately, brings federal claims against all defendants for failure to intervene in the alleged false arrest.[12]

---

[9]

*See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10]

To the extent defendants contend that it is inherently implausible that one of the Shooting Officers had an opportunity to intervene because he himself was shot during the incident, that question cannot be resolved as a matter of law at this stage.

[11]

Additionally, defendants' motion is granted with respect to claims against the Shooting Officers for failure to intervene in Terpos's alleged use of excessive force.  Nothing in the FAC permits a plausible inference that these officers had reason to know of or a realistic opportunity to prevent Terpos's action.

[12]

There is some suggestion in our Circuit's caselaw that a failure to intervene is more properly construed as a means to be liable for false arrest, rather than a separate cause of

Defendants move to dismiss all of these claims on the ground that probable cause existed as a matter of law, noting the FAC's admission that plaintiff was involved in a fistfight just before the shooting.[13]  The point merits little discussion.  As counsel for defendants conceded at oral argument, an officer may observe an individual engaging in a fistfight without necessarily having probable cause to arrest the individual for a crime.[14]

Defendants assert also that the false arrest count does not state a legally sufficient claim.  The FAC alleges that unnamed officers arrested plaintiff on August 14 "with the cooperation and aid" of a number of the named defendants.[15]  It does not allege, however, that any named defendant was present at the arrest.  Our Circuit has held that a police officer can be liable for a false arrest that "occurs outside of his presence" only under a failure-to-intervene theory.[16]  Accordingly, the false arrest claim is not sufficient as to the named defendants.

Turning then to the failure to intervene claims, the Court considers whether the FAC

---

action.  *See Escalera v. Lunn*, 361 F.3d 737, 748 n.4 (2d Cir. 2004).  In any event, the FAC does not appear to allege a violation of state law regarding the failure to intervene in the false arrest.

[13]

*See Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (Sotomayor, J.) (holding that "claim for false arrest turns only on whether probable cause existed to arrest a defendant, and . . . it is not relevant whether probable cause existed with respect to . . . any charge actually invoked by the arresting officer at the time of arrest"); *see also Ackerson v. City of White Plains*, --- F.3d ----, 2012 WL 5951836 (2d Cir. Nov. 29, 2012) (stating elements of false arrest claim under New York law and observing that elements are substantially similar to those under Section 1983).

[14]

Moreover, the FAC does not even allege that the officers in fact did observe the fistfight.  *See* FAC ¶¶ 31–32.

[15]

In his briefing and at oral argument, plaintiff has clarified that his false arrest claim is predicated solely upon his arrest on August 14, not the events of August 8.

[16]

*See Escalera*, 361 F.3d at 748 n.4.

5

adequately alleges that any of the named defendants had "reason to know" that plaintiff would be arrested unjustifiably and a "realistic opportunity" to prevent the arrest.[17]

Insofar as it asserts this claim against the Shooting Officers, the FAC is sufficient in this respect. They are alleged to have been present during the shooting. The FAC permits an inference that they were aware that plaintiff had not fired a weapon. Thus, they had reason to know that the charges against plaintiff were unfounded. It therefore may be inferred that they had a realistic opportunity to prevent the arrest from occurring almost a week later.

The FAC is insufficient in this respect with regard to all other named defendants. As plaintiff's counsel conceded at oral argument, the FAC fails to allege facts indicating that these other defendants had reason to know, prior to August 14, that plaintiff had not in fact shot at the police.

III.    *Conspiracy*

The FAC appears to allege two conspiracy theories. First, in the Section 1983 count regarding excessive force, the FAC alleges that the defendants conspired to "cover up" the events of the shooting and that this conspiracy operated to deprive plaintiff of his rights to be free of unreasonable force.[18] Second, the FAC alleges as an independent claim that defendants conspired to deprive plaintiff of his constitutional rights in violation of 42 U.S.C. § 1985(3). Defendants move to dismiss all of the conspiracy claims as barred by the intracorporate conspiracy doctrine, which generally provides that "officers, agents and employees of a single corporate entity are legally

---

[17]

   *Anderson*, 17 F.3d at 558.

[18]

   FAC ¶ 74.

incapable of conspiring together."[19]

       The Second Circuit has applied the intracorporate conspiracy doctrine to Section 1985 claims.[20]  But it has not considered its applicability to conspiracy claims brought under Section 1983.[21]  In any case, courts have recognized an exception to this doctrine when the defendants "were motivated by [an] independent personal stake in achieving the corporation's objective."[22]  Plaintiff contends that this personal stake is alleged adequately because the complaint states that the defendants conspired falsely to accuse plaintiff of attempted murder "to shield themselves from liability, embarrassment, and charges of misconduct."[23]

       The Court agrees that the intracorporate conspiracy does not apply here.  As another district court in this Circuit has concluded in a very similar case, "plaintiff clearly alleges that [the Shooting Officers] acted in [their] own personal interest, not in the interest of the police department

---

[19]

      *Hartline v. Gallo*, 546 F.3d 95, 99 n.1 (2d Cir. 2008) (internal quotation marks omitted).

[20]

      *See id.*(barring Section 1985 claim based on police department's strip-search of plaintiff)*; Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978) (barring Section 1985 claim based on law school's discharge of professor); *Girard v. 94th and Fifth Avenue Corp.*, 530 F.2d 66 (2d Cir. 1976) (barring Section 1985 claim based on cooperative board's policy preventing plaintiff from assuming lease).

[21]

      *See Appel v. Spiridon*, No. 06 Civ. 1177, 2011 WL 3651353, *19 (D. Conn. Aug. 18, 2011) (recognizing that Second Circuit has not addressed issue in Section 1983 context); *cf. Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (setting out elements of conspiracy claim under Section 1983).

[22]

      *Girard*, 530 F.2d at 71–72; *see Hartline v. Gallo*, 2006 WL 2850609, *9 (E.D.N.Y. 2006) *reasoning adopted by* 546 F.3d at 99 n.1.

[23]

      FAC ¶ 55.

or the city, by conspiring with others to cover-up [their] alleged use of excessive force."[24]  This conclusion accords with other decisions finding the doctrine inapplicable where law enforcement allegedly exercises official duties in unconstitutional ways in order to secure personal benefit.[25]

No different conclusion is warranted based on the FAC's allegations that defendants "acted within the scope of their employment and under color of state law."  Although some district courts have relied on similar allegations to conclude that the personal stake exception is not applicable,[26] it is important to distinguish the personal stake inquiry from whether a defendant has acted "under color of law" for purposes of Section 1983.  The color-of-law question principally concerns "pretense of law"—whether the defendant was "clothed with the authority of state law."[27]  The intracorporate conspiracy doctrine, however, concerns whether the allegedly unlawful conduct *actually* was just implementation of a single corporate policy by officers serving the corporate entity—whether "the conspiratorial conduct challenged is essentially a single act by a single

---

[24]

       *Hill v. City of New York*, No. 03 Civ. 1283, 2005 WL 3591719, *6 (E.D.N.Y. 2005).

[25]

       *See Yeadon v. New York City Transit Auth.*, 719 F. Supp. 204, 207, 212 (S.D.N.Y.1989) (holding that officers who allegedly engaged in race-based false arrests to "improve their arrest records in order to secure promotions and other benefits" had "independent, conspiratorial purpose"); *Medina v. Hunt*, No. 05 Civ. 1460, 2008 WL 4426748, *7–9 (N.D.N.Y. Sept. 25, 2008) (identifying factual dispute in whether officers acted pursuant to personal interests in allegedly assaulting prisoner in retaliation for participating in federal lawsuit).

[26]

       *See Anemone v. Met. Transp. Auth.*, 419 F. Supp. 2d 602, 604 (S.D.N.Y. 2006) (concluding that personal stake exception did not apply because complaint alleged that government employees acted within scope of employment); *see also Mendoza v. Cnty. of Nassau*, No. 11 Civ. 2487, 2012 WL 4490539, *8 (E.D.N.Y. Sept. 27, 2012).

[27]

       *U.S. v. Giordano*, 442 F.3d 30, 42 (2d Cir. 2006) (Sotomayor, J.) (internal quotation marks and alterations omitted).

8

corporation."[28]  Where, as here, a group of defendants allegedly maintained the pretense of serving

the state while in fact pursuing their own ends to avoid liability, it is entirely consistent to conclude

that they acted both under color of state law and with an independent personal stake barring

application of the intracorporate conspiracy doctrine.  This alleged conduct presents precisely the

"'group danger at which conspiracy liability is aimed.'"[29]  For these reasons, the Court denies

defendants' motion to dismiss plaintiff's conspiracy claims based on the intracorporate conspiracy

doctrine.[30]  Nevertheless, there are glaring defects in the FAC's pleadings that necessitate dismissal

of these claims.[31]

       First, the FAC fails to plead a Section 1985 conspiracy because it does not allege

---

[28]

       *Herrman*, 576 F.2d at 459.

[29]

       *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1127 (10th Cir. 1994) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981)).  *Cf. Ricciuti v. New York City Trans. Auth.*, 124 F.3d 123, 129–31 (2d Cir. 1997) (holding that conspiracy between officers to prosecute plaintiff through false affidavits presented triable issues of fact).

[30]

       The Court reaches this conclusion even though it finds the personal stake adequately alleged only as to the Shooting Officers.  Some district courts have assumed that the personal stake must be held by "each and every" alleged co-conspirator.  *Tardd v. Brookhaven Nat. Laboratory*, 407 F. Supp. 2d 404, 414 (E.D.N.Y. 2006); *see Watrous v. Town of Preston*, No. 10 Civ. 597, 2012 WL 4512534, *23 (D. Conn. Sept. 29, 2012).  The Court respectfully disagrees.  The reason the intracorporate conspiracy bars claims is that a conspiracy requires multiple actors; a single corporation cannot conspire with itself.  *See generally Girard*, 530 F. 2d at 70.  Where, as here, four of the alleged co-conspirators are acting in their own interests, the requisite multiplicity is established and the doctrine does not apply to the alleged conspiracy at all.  *Cf. Tavolini v. Mt. Sinai Medical Ctr.*, 984 F. Supp. 196, 206 (S.D.N.Y. 1997) (stating that doctrine applies only if "none of the members" of alleged conspiracy has independent personal stake).

[31]

       *See* 5B CHARLES A. WRIGHT, ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE, § 1357 (3d ed. 2004) ("[T]he district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties."); *Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994).

9

facts even remotely suggesting a "'racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions,'" the existence of which is essential to liability.[32]  To the contrary, the FAC alleges that the defendants acted "to shield themselves from liability, embarrassment, and charges of misconduct."[33]

Second, the Section 1983 conspiracy claim simply makes no sense.  In the count regarding excessive use of force, the FAC alleges that defendants conspired to "cover up" the incident and that this conspiracy deprived plaintiff of his right to be free of unreasonable force.[34] The FAC, however, does not allege an agreement between or among any defendants to engage in the use of excessive force.  To the extent the defendants may have conspired after the fact to conceal what had occurred, that conspiracy, if any, would have injured plaintiff only by causing his arrest or further incarceration.  But plaintiff's Section 1983 false arrest count does not rely on any theory of conspiratorial liability.[35]

In light of these significant deficiencies, dismissal of all of plaintiff's conspiracy claims is appropriate.  Because defendants failed to move to dismiss on these grounds, however, the Court will grant plaintiff leave to amend his conspiracy allegations if he thinks he has a basis for

---

[32]

*Reynolds v. Barrett*, 685 F.3d 193, 201–02 (2d Cir. 2012) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

[33]

FAC ¶ 55.

[34]

*Id.* ¶ 74.

[35]

*See id.* ¶¶ 82–89.  Nor will this Court read such a theory into the FAC's stray note in the allegations regarding the excessive use of force claim that the conspiracy deprived plaintiff of his right to be free from unreasonable search or seizure.  *Id.* ¶ 74.

10

doing so, notwithstanding his election at oral argument to stand on his complaint as to these counts.[36]


*IV.      Conclusion*

Defendants' motion to dismiss [DI 34] is granted to the extent that (1) Count I is dismissed as to (a) the claim of use of excessive force against defendant City of New York and (b) the conspiracy claims, (2) Counts II and VIII are dismissed as to all named defendants, (3) Count IV is dismissed as to (a) defendants Brightman, Kerrigan, Cozart, and Tedeschi regarding any failure to intervene in Terpos's alleged use of excessive force and (b) defendants City of New York, Terpos, Green, Jeffries, Hull, Gibbons, and Kelly, (4) Count V is dismissed in its entirety, and (5) Count XI is dismissed on the ground that no separate cause of action lies for punitive damages[37] although, of course punitive damages may be recovered in an appropriate case where otherwise permitted by law. It is denied in all other respects. Plaintiff may file an amended complaint to the extent indicated herein and at oral argument provided it is filed no later than December 21, 2012. The previously entered stay of discovery is vacated.

SO ORDERED.

Dated:  December 12, 2012

_____

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[36]

Plaintiff of course is free also to seek reconsideration of this order if he thinks it warranted.

[37]

*E.g., Paisley v. Coin Device Corp.*, 5 A.D.3d 748, 750, 773 N.Y.S.2d 582, 583 (2d Dep't 2004).